**J. O. BOOTHE, Appellant,**

v.

**Delmar DURRETT et al., Appellees.**

**No. 7006.**

Court of Civil Appeals of Texas.

Amarillo.

Jan. 30, 1961.

Rehearing Denied Jan. 30, 1961.

Huff, Splawn & Bowers, Lubbock, for appellant.

Culton, Morgan, Britain & White, Amarillo, Cowsert & Bybee, Hereford, for appellees.

PER CURIAM.

This opinion is in lieu of our opinion announced in this cause on December 12, 1960 and is to correct a statement we inadvertently made to the effect that a judgment was rendered against appellant on his cross-action. We correctly stated in another paragraph that the cross-action was dismissed by the court. We consider it advisable to rewrite the opinion to also quote specifically from the record statements on

which we have been challenged in a motion for rehearing.

J. O. Boothe is appellant in this appeal and Delmar Durrett, E. A. Edwards, J. G. Evans, G. W. Simmons and the Sims Grain Corp. are appellees. Appeal is from the action of the trial court in dismissing appellant's cross-action and awarding a judgment for appellee Durrett against appellant in a suit upon a note during the forenoon of the day the case was set for trial by a jury ordered to report at 1:30 P.M

The record shows the case had been continued several times, the last continuance having been granted in order that counsel for appellant might attend his father's funeral. At that time the case was reset for 10:00 A.M., February 8, 1960, along with a number of other cases, but the jury was not called until 1:30 P.M. of that day. There had been a formal written demand made for a jury by appellant Boothe well within the required time and the jury deposit made by him with the clerk. The record contains a letter from John D. Aiken of the law firm of Witherspoon, Aiken, Thomas & Langley of Hereford, where the case was set for trial, advising Mr. Splawn, counsel for appellant, that the jury called for the trial of the case was not to report until 1:30 P.M. but that the court would like for the lawyers to be there at 10:00 A.M. if a pre-trial had been set.

Under our view of the case whether a pre-trial was set at 10:00 o'clock, February 8, 1960 is immaterial but the record shows without question that the pre-trial had previously been conducted. Counsel for appellant in making what has been designated "Statement of Facts on Bill of Exceptions" called two of the attorneys representing other parties, had them sworn and questioned them in making his record for appeal. The testimony of Mr. White, attorney for Mr. Durrett, shows:

"Q. And, the pre-trial was completed on whatever date it was you went to Dumas. Is that correct? A. That is correct; yes, sir.

"Q. All pre-trial matters, as far as you know, were disposed of in every respect at that time? A. So far as I know, yes, sir.

\* \* \* \* \* \*

"Q. My question was, Mr. White, was there any pre-trial matters in any way, form or fashion that you were notified that needed to be disposed of prior to the time that the jury reported in at 1:30 this afternoon? A. Well, let me put it this way. I had not filed any matters that I considered were subject to pre-trial at 10:00 o'clock today.

"Q. That pertains to the plaintiff in this case, Delmar Durrett? A. That is right."

In what is designated as "Action on Bill of Exception No. 5 for J. O. Boothe et al." the trial court said "all preliminary matters were not disposed of in accordance with the court's order of August 3, 1959, since exceptions to the cross-action or third party complaint of J. O. Boothe were sustained and the said J. O. Boothe was ordered to replead, and thereafter the said J. O. Boothe did so replead, but no further pre-trial was held thereafter to the amended pleadings \* \* \*."

We find no conflict in Mr. White's testimony and the statement of the court just quoted. His statement does not show what preliminary matters were to be considered but even if there were some he had from 11:00 o'clock until 1:30 to dispose of them, as will be hereinafter shown.

Since the case was set along with others at 10:00 o'clock A.M. with the jury called at 1:30 P.M., Mr. Splawn is shown by the record to have left Lubbock at 7:00 A.M. in order to have sufficient time to reach the courthouse at Hereford by 10:00 A.M. Approximately 15 miles out of Dimmett he had carburetor trouble, could not reach a telephone, and was delayed 30–35 minutes until a trucker came along and helped him get his car started. When he arrived in Hereford he went to the court-

house, learned the courtroom was being repaired or redecorated, that the court had temporarily moved to another part of town, and it took him sometime to find the place. When he finally found the temporary quarters for the court at approximately 11:00 A.M. he learned that the judge of the court had called his office in Lubbock about 10:30 A.M.; had been advised that he was in Hereford to try a case; that about 10:45 A.M., he still having not arrived, the court upon his own motion dismissed appellant's cross-action, noting on his docket over his signature that it was dismissed with prejudice; and after hearing testimony himself, without a jury, rendered judgment for appellee Durrett against appellant and the other parties on the note. The testimony shows that Mr. White and Mr. Cowsert, attorneys for the respective appellees, dictated the judgment, which did not include a statement of dismissal with prejudice and which of course controls over the notation on the docket.

Appellant Boothe was present in the courtroom before 10:00 A.M. on the day set for trial and advised the court Mr. Splawn had agreed to meet him there at 10:00 A.M. After being duly sworn himself Mr. Splawn testified among other things as follows:

"When arriving into the courtroom, with my client, Mr. J. O. Boothe, I was informed by the Judge that a default judgment had been rendered in the case and there would be no changes or any setting aside of the judgment; that he expected me to be there at 10:00 o'clock and I wasn't here and so, therefore, the judgment was entered. At that time, I requested of the Judge and discussed with the Judge the facts and reasons or at least some of the reasons for the delay and, after being informed by the Court that there would be no changes made with reference to the action taken by the Court in the absence of Counsel for Boothe, myself, I asked that a record be made of the Proceedings * * *."

The judgment includes the dismissal of the cross-action.

Appellant's verified pleadings allege no consideration for the execution of the note sued upon and his cross-action alleges grounds of recovery against appellees.

■ In their motion for rehearing appellees say:

"The holding by this Court that a trial court abused its discretion in failing to grant an oral request (if any was, in fact, made) to reinstate a cross-action, with no motion therefor in writing as required by Rule 45(d), with no notice to the opposing parties as required by Rules 72 and 21a; and with no filing, docketing or setting on such motion as required by Rules 408 and 409, brings something entirely new and appalling to the jurisdiction of this state."

Under the facts of this case we do not believe we are precluded from holding that appellant was entitled to his day in court by any of the rules just mentioned or any other rules of procedure by which we now operate and it would be much more appalling to us if we had to say he could be deprived of his right to a trial by jury under the circumstances of this case.

The only purpose that would have been served by requiring appellant to file a formal motion with notice to the opposing counsel would have been to apprise the court and opposing counsel that he desired his right to the trial by jury he had demanded and paid for and which was available at 1:30 that day. There is not any question from this record but that the court and all counsel were present or that appellant made known his desire that the so-called judgment be set aside. This is evidenced by the fact that the record shows the judge told counsel for appellant there would be no setting aside of the judgment. The fact that counsel failed to make a formal written motion under the situation that existed on the occasion in question, which

we agree would have been much better practice, should not penalize this litigant even if better practice would have been to do so. We do not believe such a holding does violence to any substantive or procedural law of this state announced since the new rules of procedure became effective. The very first rule of our Texas Rules of Civil Procedure, which were promulgated for the purpose of avoiding procedural technicalities into which the courts of Texas had become progressively involved, provides:

"The proper objectives of rules of civil procedure is [are] to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction."

Our Supreme Court has said:

"Rule I provides that the objective of the rules is 'to obtain a just, fair, equitable and impartial adjudication of the rights of litigants * * * with as great expedition and dispatch and at the least expense both to the litigants and to the state' as may be practicable. Under these rules it is our duty to see that a case is disposed of upon its merits 'where this can be done without doing violence to the rules or injustice to the rights of the parties.'" Texas Employment Commission et al. v. Stewart Oil Co., 153 Tex. 247, 267 S.W.2d 137, 138.

■ We consider the right to a trial by jury in a proper case is a valuable one. Our courts have consistently, except in those exceptions not present in our case, held the right inviolate. Art. I, Sec. 15 of our Texas Constitution, Vernon's Ann. St., provides, among other things, that "The right of trial by jury shall remain inviolate." It is true that this article and section "only guarantees a trial by jury if one was provided for by common law, or by a statute in effect at the time of the adoption of our present Constitution in 1876." Walsh v. Spencer, Tex.Civ.App., 275 S.W.2d 220, 222 and cases there cited. We believe the case at bar is such a case. Additionally, Art. 5, Sec. 10 of our Texas Constitution is much broader than Art. I, Sec. 15 in so far as trials of causes in district courts are concerned. Art. 5, Sec. 10 provides:

"In the trial of all causes in the district courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury."

In construing this section in Tolle v. Tolle, 101 Tex. 33, 104 S.W. 1049, 1050, our Supreme Court speaking through Justice Gaines said "Language cannot be more comprehensive than this. Hence, if a probate proceeding is properly styled a 'cause,' this section undoubtedly gives a right of trial by jury. Bouvier defines a 'cause' as: 'A suit or action; any question civil or criminal contested before a court of justice.' The questions in this case are certainly questions contested before a court." So are the questions in our own case.

Even as far back as 1880 Justice Clark writing for our first Court of Civil Cas. Appeals in Lacroix v. Evans, 1 White and Willson, § 749, p. 411, said: "Upon compliance by a party to a civil action with the regulations prescribed by law, he is entitled to withdraw from the consideration of the court the issues of fact arising on the case, and to have them determined by a jury of the country. This right is guaranteed him by the constitution, and cannot be defeated in the absence of unmistakable waiver. Mere absence from the courtroom of himself or his attorney, when the case is reached and called for trial, cannot, standing alone, be construed as such waiver, for this often happens through inadvertence, accident or misfortune, which ought not to work a forfeiture of jury trial."

There are, of course, a number of proceedings in the district courts in which a

trial by jury may be denied, such as those listed in Walsh v. Spencer, supra, first full paragraph, right hand column, 275 S.W.2d at page 223. Clearly our case does not come under such exceptions and the record is without contradiction that neither appellant nor his attorney consciously did or failed to do anything that could be construed as a waiver of the jury demand they had made. We are of the firm opinion that the record reveals an abuse of discretion and we cannot in good conscience do other than reverse and remand with instructions that the cross-action dismissed by the court on his own motion be reinstated. It is accordingly ordered that the judgment of the trial court be set aside and the cross-action be reinstated.